## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 16-CR-10343-ADB |
| | ) | |
| MICHAEL L. BABICH et al., | ) | **ORAL ARGUMENT REQUESTED** |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION *IN LIMINE* TO
## PRECLUDE THE GOVERNMENT FROM ARGUING THAT
## REIMBURSEMENT SUPPORT SERVICES ARE UNLAWFUL KICKBACKS

The Second Superseding Indictment ("SSI") alleges that Insys hired certain employees—which the company called Area Business Liaisons ("ABLs") or Business Relations Managers ("BRMs")—to perform "administrative tasks that [prescribing] practitioners would have otherwise had to pay someone else to perform."  SSI, ¶¶ 29, 52-58.  The SSI alleges that these ABLs and BRMs provided administrative services "to targeted practitioners as bribes and kickbacks to induce and reward practitioners for issuing new Subsys prescriptions or increasing the dosage or units of new and existing Subsys prescriptions."  *Id.* ¶ 55.

The SSI is purposefully vague about precisely what administrative services, provided by ABLs and BRMs, the government believes crossed the line dividing permissible product support from unlawful kickbacks.  But the SSI suggests that the government intends make three arguments to the jury: (1) that it was an unlawful bribe or kickback *per se* for Insys to provide ABLs or BRMs that would help "navigate the [insurance] prior authorization processes and associated paperwork" co-incident to Subsys prescriptions written by a physician, *id.* ¶ 53; (2) that it was an unlawful bribe or kickback if the ABL or BRM happened to perform for a physician tasks unrelated to Subsys, *id.* ¶¶ 56, 58; and (3) that it was an unlawful bribe or kickback *per se* for Insys to hire a

physician's girlfriend as an ABL, if Insys's subjective purpose in making the hire was to curry favor with the physician, *id.* ¶ 57.

For the reasons explained below, each of these three arguments is legally invalid, and the Court should preclude the government from making them at trial.

## I.     Providing ABLs/BRMs to Help Navigate the Insurance Authorization Process Is Not a Bribe or Kickback.

The government apparently intends to argue that it was an illegal bribe or kickback *per se* for Insys to provide ABLs and BRMs to assist with the insurance authorization process.  This argument, however, is contrary to Office of Inspector General guidance regarding product support permissible under the Anti-Kickback Statute.  It is also contrary to the position taken by the Department of Justice in its recent motion to dismiss a professional *qui tam* relator's False Claims Act lawsuits asserting that pharmaceutical companies are prohibited from providing a range of product support services (including reimbursement support services) to prescribing physicians.[1]

The OIG "ha[s] long distinguished between free items and services that are integrally related to the offering provider or supplier's services and those that are not."  Medicare and State Health Care Programs: Fraud and Abuse; Elec. Health Records Safe Harbor Under the Anti-Kickback Statute, 78 Fed. Reg. 79202, 79210 (Dec. 27, 2013).  Because the former items and services have no value "independent" of the manufacturer's product, OIG does not consider the former items and services to be "remuneration" at all.  OIG Compliance Program Guidance for Pharm. Mfrs., 68 Fed. Reg. 23731-01, 23735 (May 5, 2003) ("2003 Compliance Program

---

[1] Although the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b, is not a RICO predicate offense, it would be illogical to say that a business practice permissible under the Anti-Kickback Statute may constitute a kickback for purposes of the mail and wire fraud statutes.  Thus, to the extent Insys's provision of certain items and services did not violate the Anti-Kickback Statute, the government cannot be allowed to invite the jury to consider such items and services to be kickbacks for purposes of the SSI's honest services fraud RICO predicate.

Guidance"); *see also* Medicare and State Health Care Programs: Fraud and Abuse; OIG Anti-Kickback Provisions, 56 Fed. Reg. 35952, 35978 (July 29, 1991) (allowing testing laboratories' "practice of giving away free computers" to physicians' offices, so long as the "computer can only be used as part of a particular service that is being provided, for example, printing out the result of laboratory tests," explaining that the computer in "this situation . . . has no independent value" but rather is "part of a package of services provided at a price that can be accurately reported" to CMS). As such, a pharmaceutical manufacturer's offering of such services does not even *implicate* the Anti-Kickback Statute, let alone violate it. *Id.* This is true regardless of whether the manufacturer offers the product support services only to favored prescribers.

The OIG has recognized that pharmaceutical manufacturers routinely provide "billing assistance tailored to [their] products [and] reimbursement consultation . . . ." 68 Fed. Reg. at 23734. The OIG has explained that such services "are properly considered part of the products purchased and their cost is already included in the products' price. Therefore, standing alone, these services have no substantial independent value and do not implicate the Federal anti-kickback statute." OIG Advisory Op., 00-10, 2000 WL 35747420, at 7 (Dec. 15, 2000). As the court held in *United States ex rel. Forney v. Medtronic, Inc.*, No. 15-cv-006264, 2017 WL 2653568, at *4 (E.D. Pa. June 19, 2017), "[o]ffering well-supported products might induce physicians to purchase [a manufacturer's] products, but only because they are better-supported products than competing products," which does not offend the Anti-Kickback Statute's purposes.

Neither the Department of Justice nor the OIG had ever suggested, before or during the time period relevant to this case, that a pharmaceutical manufacturer's provision of reimbursement support services limited to its own products, standing alone, might constitute illegal remuneration under the Anti-Kickback Statute. Rather, the *qui tam* relator's bar concocted the theory in the last several years, hoping to extract significant civil False Claims Act settlements from the myriad

pharmaceutical companies that engage in this common and legitimate business practice.  Last month, however, the Department of Justice moved to dismiss a professional relator's series of lawsuits against numerous pharmaceutical companies—including Eli Lilly, Gilead, Biogen, Amgen, and others—alleging that a manufacturer's provision of reimbursement support services to physicians violates the Anti-Kickback Statute.  In its motion to dismiss, the Department of Justice told the court, consistent with OIG guidance, that a pharmaceutical company is entitled to provide "basic product support" that assists patients "after a physician has appropriately prescribed a medication."  *See, e.g.*, Memorandum of Law in Support of the United States' Motion to Dismiss Relator's First Amended Complaint, *United States ex rel. NHCA-Tev, LLC v. Teva Pharm. Prods. Ltd.*, No. 17-cv-2040, at 15-16 (E.D. Pa. Dec. 17, 2018).  It further asserted that the suits "would undermine common industry practices" that are "appropriate and beneficial to federal healthcare programs and their beneficiaries."  *Id.*

It is worth noting that the SSI does not allege that prescribing physicians were obligated to shepherd their Subsys patients through the insurance process.  Thus, the government's starting premise that Insys's provision of reimbursement support services constituted a benefit to the prescribing physician—rather than a benefit to the patient—is pure *ipse dixit*.  It is bad enough that the government is trying to improperly recast the Anti-Kickback Statute as a RICO predicate.  *See* Dkt. No. 514 at 8-11.  Surely, it cannot also be allowed to argue that conduct that the government has recognized is compliant with the Anti-Kickback Statute somehow constitutes a kickback for RICO purposes.

The government should not be permitted to argue at trial, and the Court should provide whatever cautionary instructions it deems necessary to ensure that the jury is not confused into thinking, that Insys's provision of reimbursement support services—whether through ABLs,

BRMs, or prior authorization specialists in the IRC—are bribes kickbacks that can serve as the basis for a RICO conviction.

## II.     It Is Not Sufficient for the Government to Show That an ABL/BRM Performed Tasks Unrelated to Subsys.

The SSI alleges that an ABL, while being paid by Insys, "essentially" served as an "administrative assistant" to Practitioner #3.  SSI, ¶ 56.  The SSI similarly alleges that an ABL, while being paid by Insys, "essentially" served as a "full-time support staff" for Practitioner #4. *Id.* ¶ 58.  The salaries that Insys paid to the ABLs to perform Subsys-related product support services, however, by definition fit within the Anti-Kickback Statute's employee safe harbor, which expressly protects "any amount paid by an employer to an employee (who has a bona fide employment relationship with such employer) for employment in the provision of covered items or services."  42 U.S.C. § 1320a-7b(b)(3)(B).  If the government's theory is that it was an illegal bribe or kickback for the ABL to provide the physician, without charge, valuable services completely unrelated to Subsys, the government should be required to come forward with evidence showing not only that ABL performed such services, but also that Defendants were involved in directing that to occur as part of a *quid pro quo*.  Otherwise, the ABLs' conduct is not relevant.

## III.    It Is Not Sufficient for the Government to Show That an ABL/BRM Had a Preexisting Romantic Relationship With the Physician.

The SSI alleges that Insys hired as an ABL the girlfriend of Practitioner #8.  *See* SSI, ¶ 57. The SSI alleges that the "purpose of hiring this employee was to bribe Practitioner #8 . . . ."  *Id.* So long as an employment relationship is "bona fide," however, it fits with the Anti-Kickback Statute's employee safe harbor, 42 U.S.C. § 1320a-7b(b)(3)(B), regardless of whether the company hoped to curry favor with a potential source of federal healthcare program business.

The SSI does not allege that Insys hired Practitioner #8's girlfriend to launder payments to Practitioner #8 himself (*i.e.*, that the girlfriend's job was a sham and that her paychecks were turned

over to Practitioner #8).  Nor does it allege that Insys paid Practitioner #8's girlfriend to provide Practitioner #8 services unrelated to Subsys.[2]  The absence of such allegations precludes the government from showing that Insys's relationship with Practitioner #8's girlfriend fell outside the Anti-Kickback Statute's employee safe harbor—which thus should preclude the government as a matter of law from arguing that hiring her was an illegal bribe or kickback for purposes of the mail and wire fraud statutes.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Defendants' motion *in limine*.

---

[2] Indeed, the SSI does not allege that she provided Practitioner #8 any services at all; instead, the SSI alleges that she worked "at a pharmacy associated with Practitioner #8."  *Id.* ¶ 57.

Dated:  January 8, 2019

/s/ Tracy A. Miner
Tracy A. Miner (BBO# 547137)
tminer@demeollp.com
Megan Siddall (BBO# 568979)
msiddall@demeollp.com
Demeo LLP
200 State Street
Boston, MA 02109
Telephone: (617) 263-2600

**Attorneys for Michael Gurry**

/s/ Peter C. Horstmann
Peter C. Horstmann (BBO# 556377)
pete@horstmannlaw.com
Law Offices Peter Charles Horstmann
450 Lexington Street, Suite 101
Newton, MA 02466

**Attorney for Sunrise Lee**

/s/ Aaron M. Katz
Beth A. Wilkinson (admitted *pro hac vice*)
bwilkinson@wilkinsonwalsh.com
Alexandra M. Walsh (admitted *pro hac vice*)
awalsh@wilkinsonwalsh.com
Kosta S. Stojilkovic (admitted *pro hac vice*)
kstojilkovic@wilkinsonwalsh.com
2001 M Street NW
Washington, D.C. 20036
Telephone: (202) 847-4000

Brien T. O'Connor (BBO# 546767)
brien.o'connor@ropesgray.com
Aaron M. Katz (BBO# 662457)
aaron.katz@ropesgray.com
Ropes & Gray LLP
800 Boylston Street
Boston, MA 02199
Telephone: (617) 951-7000

**Attorneys for Dr. John Kapoor**

Respectfully submitted,

/s/ Steven A. Tyrrell
Steven A. Tyrrell (admitted *pro hac vice*)
steven.tyrrell@weil.com
Patrick J. O'Toole, Jr. (BBO# 559267)
Patrick.otoole@weil.com
Weil, Gotshal & Manges LLP
2001 M Street, NW
Washington, D.C. 20036
Telephone: (202) 682-7213

**Attorneys for Richard Simon**

/s/ Michael Kendall
Michael Kendall (BBO# 544866)
michael.kendall@whitecase.com
Alexandra Gliga (BBO# 694959)
alexandra.gliga@whitecase.com
White & Case, LLP
75 State Street
Boston, MA 02109
Telephone: (617) 939-9310

**Attorney for Joseph Rowan**

## LOCAL RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1, I hereby certify that counsel for Defendants and the government have conferred and that counsel for the government objects.

/s/ Aaron M. Katz

## CERTIFICATE OF SERVICE

I, Aaron M. Katz, hereby certify that a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on January 8, 2019.

/s/ Aaron M. Katz