UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>(3) MICHAEL J. GURRY<br>(6) JOSEPH A. ROWAN<br><br>Defendants | CRIMINAL NO. 16-10343-ADB |

GOVERNMENT'S OPPOSITION TO DEFENDANTS' SUPPLEMEMNTAL MEMORANDUM REGARDING THE ADMISSIBILITY OF TAPE RECORDED STATEMENTS

## I.   INTRODUCTION

Defendants Rowan and Gurry seek to subvert long established, well-settled evidentiary principles barring the admission of self-serving statements. The defendants claim that (1) instructions are not hearsay, (2) that tape recordings are admissible to show what the defendants *did not* say during certain meetings, and (3) that tape recorded statements fall under Rule 803(3) exception for present-sense impressions. All of these arguments fail for the reasons discussed below. Because Rowan and Gurry's prior statements from taped interviews are hearsay not subject to any exception, defendants cannot present the statements in either their case-in-chief or cross-examination of the government's witnesses. *See United States v. Cianci*, 378 F.3d 71, 106 (1st Cir. 2004).

## II.  LEGAL PRINCIPLES

Hearsay statements are generally excluded as evidence at trial because they are considered untrustworthy. The defendant's out-of-court statements are not hearsay if they are "offered against" the defendant. Fed. R. Evid. 801(d)(2). This is because statements offered

against a party are the product of the adversarial system and possess circumstantial guarantees of trustworthiness. *See* Fed. R. Evid. 801(d)(2) Advisory Committee's Note. A party's admission has "a special value when offered against the party" … it "discredits the party's statements inconsistent with the present claim asserted in pleadings and testimony, much like a witness impeached by contradictory statements." *McCormick on Evidence* § 254, at 141 (John W. Strong ed., 4th ed.1992).

In contrast, a defendant's self-serving statements are untrustworthy. Fed. R. Evid. 801(d)(2). A defendant's attempt to introduce their own self-serving statements would "effectuate an end-run around the adversarial process by, in effect, testifying without swearing an oath, facing cross examination, or being subject to first-hand scrutiny by the jury". *United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005).

### III.  ARGUMENT

#### A.  Rowan and Gurry's Self-Serving Instructions Are Hearsay

Rowan and Gurry's defensive statements are classic hearsay because they are offered "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). The defendants seek to admit carefully selected portions recorded statements in which Rowan and Gurry appear to describe seemingly legitimate sales practices. These statements are offered to show "the truth of the matter asserted"—to show that that Rowan, Gurry, and Insys employees acted in

conformance with the proffered statements.  Take, for example, a few tape-recordings played during Joseph Rowan's opening statement:

- "We are focusing on the right physicians doing the right talks with the right audience."  1/28/2019 Trial Tr. at 171:10-12, 20-22;

- "[W]e are not promoting the product for other than breakthrough cancer pain.  But the patient and the physician can take it even if they don't have that diagnosis."  *Id.* at 174:6-8;

- We are not enticing anybody … Don't talk about enticing when we have our speakers."  *Id.* at 181:11-13;

- "We don't want honorariums.  We don't discuss honorariums with physicians.  It's not your business."  *Id.* at 181:15-172;

- "You don't talk about money ever."  *Id.* at 181:18-19; and

- "When you're submitting a doctor, potential to become a speaker, you don't say: '…[H]e said he's going to write a lot more if he becomes a speaker.'"  *Id.* at 181:19-22.

Each statement is offered to describe Rowan, Gurry, and Insys sales representatives' actions.  They fail the classic hearsay test: the statements would have no purpose if they were not true.

The defendants try to garble the hearsay rules by claiming that instructions are not hearsay.  To be clear, verbal instructions are hearsay if—as here—they are offered to prove the defendant acted in accordance with the instructions.  Fed. R. Evid. 801.  Defendants grossly mischaracterize *United States v. Bailey*, 270 F.3d 83, 87 (1st Cir. 2001).  In *Bailey*, agents tracked a barrel containing 93 pounds of marijuana.  *Id.* at 85.  At trial an agent testified that a cooperator (a) brought agents to a rendezvous point and (b) called the defendant's beeper, punching in the code "411."  *Id.*  The cooperator in *Bailey* never made a verbal statement.  The First Circuit held that the cooperator's acts of "making a phone call, and her driving the agents to the rendezvous, was non-assertive conduct and outside the scope of the hearsay rule."  *Id.*  There

is no analogy between testimony describing the cooperator's physical actions and Rowan and Gurry's tape-recorded verbal statements.

### B.     The Tapes Are Not Admissible To Show the Absence of Certain Speech.

The defendants argue that the tape recordings are admissible to show what the defendants did not say during those recordings. This argument defies legal precedent and common sense. Under the defendants' reasoning all hearsay would be admissible. Statements against interest are not hearsay and are admissible under Rule 801(d)(2). All other hearsay statements would be admissible to show the absence of statements against interest. The defendants' exception would swallow the rule.

The defendants support their argument with two inapposite cases. Both cases involved a witness who testified that he did not hear a *specific* statement. In *Hoffman v. Neves*, a prisoner sued two former prison nurses for inadequate medical treatment. No. 17-13263, 2018 WL 4610866, at *2 (E.D. Mich. Sept. 26, 2018). The Plaintiff stated that the prison doctor never told nurses to delay treatment. *Id.* (in summary judgment briefing). In *Llamas v. Seibel*, a prosecutor asked an officer "Did you get any information that [the victim] was assaulted by anyone other than the defendant?" No. 16-CV-05812-WHO, 2017 WL 3782175, at *8 (N.D. Cal. Aug. 31, 2017). The officer answered, "No, I didn't." *Id.* The courts correctly admitted that testimony because an assertion "that no statement was ever made" is not an out-of-court statement. *Id.*, *see* Fed. R. Evid. 801(c). Indeed, neither court admitted a single out-of-court statement, let alone a list of unfettered recordings like the ones offered by the defendants.

### C.     Rule 803(3) is Inapplicable Because the Statements Do Not Reflect Gurry and Rowan's State of Mind

Nor do Gurry and Rowan's recorded statements fall under the Rule 803(3) exception for a declarant's "then existing state of mind (such as motive, intent, or plan)." Fed. R. Evid. 803(3).

Rule 803(3) has two requirements. First, it "requires contemporaneity between the event that gives rise to the state of mind or intention and the declarant's expression of that state of mind or intention." *Packgen v. Berry Plastics Corp.*, 847 F.3d 80, 91 (1st Cir. 2017) (internal citations omitted). Non-contemporaneous statements are "untrustworthy, and therefore unreliable, because [the declarant] had enough time to fabricate and misrepresent his statement." *United States v. Rivera-Hernandez*, 497 F.3d 71, 80 (1st Cir. 2007). Second, the exception typically applies to brief statements about the declarant's condition—for example, that she was afraid, hungry, exhausted—and "has been held not to allow more expansive statements elaborating upon the underlying reasons for the declarant's state of mind." *United States v. Alzanki*, 54 F.3d 994, 1008 (1st Cir. 1995). *United States v. Fontenot*, 14 F.3d 1364, 1371 (9th Cir. 1994) (Rule 803(3) "narrowly limit[s] those admissible statements to declarations of condition—'I'm scared'—and not belief—'I'm scared because someone threatened me.'").

The recordings are not contemporaneous with a specific event. The recordings contain general planning and strategy conversations about how to promote Subsys to doctors. To the extent that the defendants argue that Rowan and Gurry's statements reflect their state of mind when the statements were made, "that [a] statement was made at one point during the time of charged conspiracy ***cannot be sufficient to mandate its admission.***" *United States v. Cianci*, 378 F.3d 71, 106 (1st Cir. 2004) (emphasis added). It is unduly prejudicial to admit the defendants' self-serving statements to illustrate their purported state of mind at a few pinpoints during a years-long conspiracy. Fed. R. Evid. 403. To the extent that defendants argue that Rowan and Gurry's statements reflect their state of mind during interactions with doctors, the recordings are not contemporaneous perceptions of those interactions. *Compare with United States v. Rivera-Hernandez*, 497 F.3d 71, 82 (1st Cir. 2007) (excluding statement justifying

fraudulent invoices because it was made "well after" the demand for a kickback). Thus, defendants' reliance on *United States v. Partyka* is misguided. 561 F.2d 118, 125 (8th Cir. 1977). Unlike the case at bar, *Partyka* turned on the defendant's state-of-mind at a single instance—when the government informant first asked defendant to sell drugs to an undercover agent. *Id.* at 121.

Next, the defendants' own description of the recordings makes it clear that the recordings describe the declarant's beliefs, not his present mental condition. The defendants offer "Rowan's statements rejecting sales representatives' misguided suggestions that financial inducements be dangled out as enticements to potential prescribers." Defs' Supp. Memo. at 10, ECF No. 723. Rowan goes far beyond stating his condition—instead he explains why he is rejecting the sales representatives' suggestion, what they should do instead, and how they should do it.

Additionally, other statements by Rowan—some of which may be offered by the government—demonstrate that Rowan's allegedly exculpatory statements are actually self-serving attempts to cover his tracks. In a recording cited by the defendants, Rowan tells his sales team not to talk about money with physicians. But in other calls, Rowan clearly links speaker fees and prescriptions. Rowan tells one sales rep (Raymond Furchak) to use a speaker if he's going to "give you the scripts you need, give two a week." Rowan congratulates another sales representative for attending a speaker program because the speaker wrote four prescriptions in the week after the program. He repeatedly talks about the "return on investment" of the speaker programs. Rowan and Gurry both use coded language: "This is a game, we know how to play

the game" (Gurry) and "[You need to get] uncomfortable in a comfortable way" (Rowan).[1]

The court rejected the same type of self-serving statements in *United States v. Cianci*, another RICO case. There, the defendant offered a tape in which he tells a contractor that he would not tolerate corruption, "No one will ask you for a thing. If anybody does, you pick up the phone and call me. I'll cut his .... off and have him arrested, okay." *United States v. Cianci*, 378 F.3d 71, 105 (1st Cir. 2004). Later, the defendant correctly guesses that the contractor is an FBI agent. *Id.* The court affirmed the district court's decision to exclude those statements as "'self-serving' attempts to cover tracks already made." *Id.* at 106. Similarly, in *United States v. Brown*, the court excluded self-serving videos in which the defendants espoused their belief that the government does not have authority to collect personal income taxes. No. 09-30-GZS, 2009 WL 3151870, at *2 (D.N.H. Sept. 24, 2009). The court held that the "self-serving statements of the Defendants that they wanted to offer were clearly hearsay, being out of court statements offered for the truth of the matters asserted" and there was "no other evidentiary basis to admit evidence relating to the state of mind of either Defendant." *Id.*

The instant case differs from *United States v. Hayes*, which was cited by the defendants, in two important ways. 369 F.3d 564, 568 (D.C. Cir. 2004). First, there was no evidence in *Hayes* that the defendant was being duplicitous when he told the government-cooperator to "tell the truth." Second, the exhortation "tell the truth" reflects the speaker's state of mind—it is very

---

[1] The recordings were disclosed in February and April 2017. Based upon counsel's opening statement, the United States is evaluating whether it will introduce these recordings in its case in chief and reserves the right to do so.

different from Rowan and Gurry's wide-ranging advice about how they could increase sales while appearing compliant.

   **D.**  **The Rule of Completeness Does Not Apply to the Proffered Recordings**

Even if the Court admits some excerpts of tape-recorded conversations offered by the government, the defendant's self-serving statements are not admissible under the rule of completeness. The rule of completeness "does not permit the admission of otherwise inadmissible evidence simply because one party has referred to a portion of such evidence, ... rather, it operates to ensure fairness where a misunderstanding or distortion created by the other party can only be averted by the introduction of the full text of the out-of-court statement." *United States v. Simonelli*, 237 F.3d 19, 28 (1st Cir. 2001) (rejecting the admission of prior consistent statements). *United States v. Bauzo-Santiago* demonstrated the limits of the rule of completeness: the court admitted the defendant's confession but excluded the defendant's later recantation. 49 F. Supp. 3d 155, 158 (D.P.R. 2014). The court ruled that the statements were separate and distinct. *Id.* (citing *Harrington v. United States*, 504 F.2d 1306, 1315 (1st Cir.1974) (refusing to admit documents merely because they were executed on the same day). Here too the defendant's incriminating statements and defensive statements are separate and distinct.

   **E.**  **The Defendants Must Authenticate the Tapes Through a Qualified Witness**

If the Court reaches the issue of authenticity, the government agrees that the tape recordings—if found to be admissible—may be authenticated by Furchak, Guzman, Rowan, Gurry, or another qualified person who participated in the recorded conversation. But contrary to the defendants' assertion, the recordings cannot be admitted solely through a forensic expert witness because the expert cannot identify the voices on the recordings.[2] Defs' Supp. Memo. at

---

[2] The government does not dispute that the digital files are forensically sound.

15, ECF No. 723. The defendants cannot rely on *United States v. Rengifo*, which involved tapes created during a wiretap investigation. 789 F.2d 975, 979 (1st Cir. 1986). There, the authenticating agent "testified that he had some familiarity with the voices of the speakers in the recorded conversations because he had obtained voice exemplars from [several speakers] and, in addition, had listened to some of the actual conversations." *Id.*

Nor does Rule 104(d) allow defendant Rowan or Gurry to testify solely for the purpose of admitting an exhibit. Rule 104(d) is based on the Supreme Court's decision in *Simmons v. United States*, which held that when a defendant testifies in support of a motion to suppress evidence, his testimony may not be used against him thereafter unless he makes no objection. 390 U.S. 377 (1968). Consequently, Rule 104(d) is typically applied to motions to suppress. Even then, defendants are often required to answer certain questions on cross-examination. *United States v. Roberts*, 14 F.3d 502, 517 (10th Cir. 1993) (allowing the prosecutor to question the defendant about his ability to run a business while substantially under the influence of drugs during suppression hearing); *United States v. Williams*, 754 F.2d 672, 676 (6th Cir. 1985) (at the suppression hearing, the defendant was compelled to answer whether he knew he was carrying drugs because he had placed his credibility in issue in his earlier testimony). The defendants have not identified a case in which Rule 104(d) has been used to allow a defendant to admit an exhibit into evidence without providing any other testimony. If Rowan or Gurry testify to authenticate and admit the recordings, they must be subject to full cross-examination.

**F.     The Scope of Cross Examination**

Contrary to their assertion, whomever the Defendants choose to call during their case in chief, the scope of cross examination of each witness should not be limited merely to the tapes' authenticity, voice identifications, and the accuracy of the transcripts. (See Defendant Joseph Rowan's Supplemental Memorandum Regarding Admissibility of Whistleblower Tapes, ECF

736 at 2-3). Rule 611 (b) merely restricts cross examination to the "subject matter of the direct examination and matters affecting the credibility of the witness" The subject matter of the tapes, not just authenticity of the tapes, are very clearly ripe for cross-examination. *See, e.g. Neeley v. Israel*, 715 F.2d 1261, 1264 (7th Cir. 1983) (defendant who testified to events on the day of the murder could be cross-examined about "earlier confrontations.").

## IV.  CONCLUSION

The government respectfully requests the Court deny the Defendants' motion to admit the proffered tape recordings because the recordings are self-serving hearsay not subject to any exception.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:    */s/ K. Nathaniel Yeager*
K. NATHANIEL YEAGER (BBO # 630992)
DAVID G. LAZARUS (BBO #624907 )
FRED WYSHAK, JR. (BBO #535940)
Assistant U.S. Attorneys
One Courthouse Way, Ste. 9200
Boston, MA 02210
(617) 748-3100
david.lazarus2@usdoj.gov
nathaniel.yeager@usdoj.gov
fred.wyshak@usdo**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ K. Nathaniel Yeager*
David G. Lazarus

Assistant United States Attorney

Date: February 27, 2019