UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    v.<br><br>MICHAEL L. BABICH<br>ALEC BURLAKOFF,<br>MICHAEL J. GURRY,<br>RICHARD M. SIMON,<br>SUNRISE LEE<br>JOSEPH A. ROWAN, and JOHN N. KAPOOR,<br><br>    Defendants. | Cr. No. 16-10343-ADB |

## DEFENDANT MICHAEL GURRY'S
## <u>MOTION FOR A NEW TRIAL</u>

    Defendant Michael Gurry submits this Motion for a New Trial pursuant to Federal Rule of Criminal Procedure 33 to address both the weight of the evidence and the prejudicial impact to Mr. Gurry specifically of the Government's improper rebuttal closing, among other trial errors.[1] It is fundamental to the Constitution's guarantee of a fair trial that, "while [the Government] may strike hard blows, [it] is not at liberty to strike foul ones." <u>Berger v. United States</u>, 295 U.S. 78, 88 (1935). The Government struck a foul blow against Mr. Gurry when it asserted that he "bears the responsibility" for fraud in the IRC "as a corporate officer," which he was not. <u>See</u> 4/5/19 Tr. 174:12-14. This was not the Government's only prejudicial misstep. The Government also repeatedly appealed to jurors' sympathy by invoking the dangers of opioids, although the Court instructed the jury from the outset that this case was not about the opioid epidemic. The Court cannot be confident that Mr. Gurry, who was convicted primarily on the basis of one

---

[1] Mr. Gurry also joins Defendants' Renewed Joint Motion for Judgment of Acquittal and Joint Motion for a New Trial ("Defendants' Joint Motion"), and expressly incorporates and adopts the arguments made in support of Defendants' Joint Motion.

cooperator's testimony, had a fair trial, or that the weight of the evidence supported the verdict against him. The only adequate remedy is to grant Mr. Gurry a new trial.

## BACKGROUND

Mike Gurry is the former Vice President of Market Access at Insys Therapeutics ("Insys"). He was charged, along with other executives and sales personnel, with a racketeering conspiracy in violation of 18 U.S.C. § 1962(d).

Defendants requested an Executive or Managerial Role instruction, informing the jury:

> Even if a defendant holds an executive or managerial position at Insys, that is not a basis to convict the defendant of the RICO conspiracy charged in the indictment. A healthcare company executive's or manager's failure to correct or prevent misconduct at the company does not constitute a violation of the RICO statute. In other words, even if you think that a defendant should have known about certain conduct, should have done more to correct or prevent such conduct, or should be responsible for the conduct of company employees, you cannot convict the defendant on that basis. Such considerations have no place in this case.

See Docket No. 581, Defs.' Proposed Instruction No. 14. At the final charge conference, the Court rejected the proposed role instruction because Defendants "don't need this . . . It's just the anti-Park instruction, and [the Government is] not charging anything where [Defendants] are going to be convicted on that theory." See 4/3/19 Tr. 98:18-21. Fearing that the Government would try to pin the blame on Defendants by virtue of their roles in the company, defense counsel responded that the proposed instruction:

> [R]eally relates to how the government argues the case, including in rebuttal. I mean, if the government is basically telling the jury, the buck stops with the top guys, the fish rocks from the head down, that invites these kind of – whether by those words or less colorful ones, that invites these kind of civil law . . . responsibility concepts. So I think how the government argues it relates to the need for it. So I would hope and expect the government's not going to say . . . don't let the senior people off. It's not a question of whether they're senior in the company. It's a question of whether they joined the conspiracy.

4/3/19 Tr. 98:22–99:8 (emphasis added).  The Government objected, "Clearly we've instructed now the jury for about 60 pages on what the government's burden is."  4/3/19 Tr. 99:9-10.

In its rebuttal closing argument, after Defendants had no further opportunities to address the jury, the very same prosecutor argued precisely what Defendants feared, stating "[R]egarding Mr. Gurry, who was running the IRC, who is responsible for the IRC, that's his job. *As a corporate officer, he bears the responsibility*."  4/5/19 Tr. 174:12-14 (emphasis added).[2]  Defense counsel objected immediately to this statement, but the Government went on to say, "[Y]et Mr. Gurry wants to sit there and tell you, 'I had no idea.'  It's preposterous."  4/5/19 Tr. 174:16-22.  The Government additionally made the improper argument in rebuttal that, "It is though, if I took a gun and fired it into the audience, which I'm not going to do, I don't intend to shoot any particular individual, but I know somebody's going to get hit.  And when defendants arm these doctors with all these bribes and all these incentives, they were creating a loaded gun."  4/5/19 Tr. 169:23–170:4.[3]  Immediately after the Government's rebuttal, the Court gave two additional instructions:

> The first one is, the corporation, Insys, is not on trial here.  The individuals are on trial and your verdict must turn on your assessment of the culpability of them as individuals and not as corporate officers.  That's number one.
>
> Number two, I want you to remember, throughout, that if you're unclear on the law, if you're not sure what the law is, based upon what you heard in closing arguments and what you heard me say, it's what I say that controls; and if you have any questions about it, you can have the written instructions back there and you can look it up and remind yourself of what I said, but I am the giver of the law here.

---

[2] Nor was this statement the Government's only suggestion that Mr. Gurry should be convicted for the wrongdoing of others. The Government argued, "there was a massive insurance fraud here, happened every day, day in and day out . . . but [Defendants] want to sit here and say to you that these men and women who ran this company, who were the managers, had no idea what was going on . . . it's just a preposterous concept that the people running this company are oblivious to what's happening within it."  4/5/19 Tr. 161:16–162:1; see also 4/5/19 Tr. 162:14-18 ("And yet these defendants want to sit here and say, "We had no idea." Are they really that bad at their jobs that they were totally clueless as to what was going on in this company?  I suggest not.").

[3] The Court overruled an objection from Defense counsel that the "argument on the increased risk is confusing your instruction on intent.  Those are two different things."  4/5/19 Tr. 172:21-24.

4/5/19 Tr. 185:19–186:5.  Counsel for Mr. Gurry continued to object, both that the Government was improperly invoking "civil law concept[s]," and that the rebuttal was obviously prepared in advance, as evidenced by the Government's use of prepared slides.  4/5/19 Tr. 186:9-16.  Counsel for Dr. Kapoor likewise objected, noting the Government was arguing Defendants "should have known" by virtue of their position in the company and "was constantly invoking civil concepts to try to argue criminal law.  It was totally inappropriate."  4/5/19 Tr. 186:21–12.  Defendants requested a stronger curative instruction.  4/5/19 Tr. 187:3-4.  The Court did give a further instruction, reminding the jury that what lawyers argue is not evidence and that the standard is proof beyond a reasonable doubt, but did not at that time squarely address the Government's improper comment that the jury should convict Mr. Gurry because he was purportedly a corporate officer.  See 4/5/19 Tr. 188:4-18.  The Court then instructed the jury on how to conduct its deliberations and discharged the jurors for the weekend.

Over the weekend, Defendants moved for a curative instruction or mistrial based on the Government's improper rebuttal.  See Docket No. 819.  The Court agreed to give a modified version of the proposed instructions but did not agree to have the instruction sent back to the jury in writing with the other instructions.[4]  In relevant part, the Court told the jury:

> At least some of the defendants were at relevant times corporate officers or managers with responsibility for their departments and/or subordinates.  The fact that a defendant had an executive or managerial position at Insys is not alone enough to convict the defendant of the RICO conspiracy charges in the indictment.
>
> A healthcare company executive's or manager's failure to correct or prevent misconduct at the company does not alone constitute a violation of the RICO statute.  In other words, even if you think that a defendant should have known about certain conduct, should have done more to correct or prevent such conduct or should be responsible for the conduct of company employees, you cannot convict the defendant on that basis.

---

[4] After defense counsel requested that "whatever you ultimately decide you plan to read to the jury . . . go back with the rest of the instructions," the Government objected and the Court denied the request.  4/8/19 Tr. 17:20–18:13.

> . . .
>
> Finally, you should not interpret anything that was said in this case as a comment on the fact that defendants chose not to testify. As I've already instructed you, defendants have an absolute constitutional right not to testify. And you cannot draw any inference from the fact that they exercised their rights. You cannot consider or discuss defendants' choices not to testify during your deliberations.

4/8/19 Tr. 20:5–21:10, 21:18-25. Before the Court read its instructions, counsel for Defendants objected that the "is not alone enough" language was misleading, and that "not a proper basis" or "not a sufficient basis" would be more accurate. 4/8/19 Tr. 16:5-6, 17-18.

The jury returned a guilty verdict against all defendants on May 2, 2019, finding Mr. Gurry culpable for only the mail fraud and wire fraud predicates.

## ARGUMENT

The Court has "broad discretion" to grant a new trial under Rule 33. See United States v. Sampson, No. 01-10384-LTS, 2017 WL 3495703, at *3 (D. Mass. Aug. 15, 2017). The Court's power to grant a new trial is "greater than its power to grant a motion for acquittal." See United States v. Schneider, 157 F. Supp. 2d 1044, 1055 (N.D. Iowa 2001) (quoting United States v. Ruiz, 105 F.3d 1492, 1501 (1st Cir. 1997)). In evaluating the weight of the evidence on a motion for a new trial, the Court must consider the evidence favorable to the Government "as well as the defendants' contrary view of the events in question." See United States v. Ayala-Garcia, 574 F.3d 5, 7 (1st Cir. 2009). Unlike a motion for acquittal under Rule 29, the Court "may, and indeed must, consider its own evaluation of the credibility of the evidence" (and may reconsider evidentiary rulings made during trial) and a new trial may be warranted if the Court "disagrees with the jury's judgment." Sampson, 2017 WL 3495703, at *3. The Court should exercise its discretion to grant Mr. Gurry a new trial to prevent a miscarriage of justice in light of the Government's patently improper rebuttal closing, among other errors, and the weak nature of the evidence against him.

5

## I. Mr. Gurry Did Not Have a Fair Trial

### A. The Government's Statement that Mr. Gurry "Bears Responsibility" as a "Corporate Officer" Egregiously Misstated Both the Law and the Facts

For all the reasons stated in Defendants' Joint Motion, the Government's rebuttal closing was improper on both the law and the facts. The statement that "Mr. Gurry. . . [a]s a corporate officer, he bears the responsibility," 4/5/19 Tr. 174:12-14, was squarely directed at Mr. Gurry, and unfairly prejudiced the jury against him.

The Government's remark was an incorrect statement of both law and fact, and was contrary to the Court's instructions. There are circumstances in which a corporate officer may be held responsibility for the wrongdoing of the company, see United States v. Park, 421 U.S. 658 (1975), but this case is not one of those circumstances. As the Court instructed the jury, the Government had the burden of proving beyond a reasonable doubt the Mr. Gurry joined the RICO conspiracy "with the specific intent that he, she or other members of the conspiracy would commit conduct that constitutes a pattern of racketeering activity." 4/4/19 Tr. 41:18-22.

Likewise, the Government's contention that Mr. Gurry was a "corporate officer" lacked any a basis in the evidence at trial. Mr. Gurry was <u>never</u> an officer of Insys Therapeutics. The Sixth Amendment guarantees Mr. Gurry a verdict based solely on the evidence at trial, and it was misconduct for the Government to claim Mr. Gurry "bears the responsibility" on the basis of a false assertion that was not in evidence. See United States v. Ofray-Campos, 534 F.3d 1, 18 (1st Cir. 2008) ("The Sixth Amendment requires that the jury's verdict must be based solely upon the evidence developed at trial."). The Government's statement elevated Mr. Gurry's position in the company in the eyes of the jury. The Government then compounded its error by asking the jury to convict Mr. Gurry on the basis of his (fictional) position. In doing so, the Government violated Mr. Gurry's Sixth Amendment rights.

The Government will no doubt deny that it meant what it said in rebuttal, as it claimed after the Defendants filed their mistrial motion. See 4/8/19 Tr. 4:13–5:10. The Court should reject that argument out of hand. The issue is not what the Government intended, but rather what the jury would have reasonably understood. See United States v. Hardy, 37 F.3d 753, 757 (1st Cir. 1994).

### B. The Government Improperly Referenced Mr. Gurry's Failure to Testify and Attempted to Shift the Burden of Proof

The Government's rebuttal was peppered with repeated references to Defendants' failure to testify. Any reference by the Government to a Defendants' exercise of his or her Fifth Amendment rights is manifestly improper. In one such instance, the Government expressly named Mr. Gurry, stating "yet Mr. Gurry wants to sit there and tell you, 'I had no idea.'" 4/5/19 Tr. 174:20-21. And the Government further referenced the Defendants jointly, or their counsel, a number of times, alluding to Defendants' failure to testify.[5] The jury would have understood repeated references to Defendants "sitting there" and "telling you" as referencing the Defendants' failure to testify. Just as prejudicial, the jury would have understood these comments to imply that Defendants had a burden to prove the Government wrong, contrary to the Court's instructions.

### C. The Government Improperly Inflamed the Jury and Magnified the Impact of Emotional Patient Testimony that was Admitted in Error

As detailed in Defendants' Joint Motion, the Government repeatedly inflamed the jury's natural sympathy for patient witnesses, and improperly asked the jury to convict Defendants on the grounds that harm to patients was foreseeable. In addition to the Government's improper gun

---

[5] See 4/5/19 Tr. 161:19-22 (they "want to sit here and say to you . . . that these men and women who ran this company, who were managers, had no idea what was going on"); 4/5/19 Tr. 168:23-25 ("they can't sit here and tell you, now, that they didn't intend for that to happen"); 4/5/19 Tr. "173:7-9 ("For [Dr. Kapoor] to sit there, for Ms. Wilkinson to suggest that he has no clue what was going on, it's preposterous"); 4/5/19 Tr. 185:4-5 ("Mr. Tyrrell was basically standing up there testifying on behalf of his client.").

7

analogy in its rebuttal closing, the Government began its initial closing argument telling the jury that Subsys is "70 to 100 times more potent than morphine. 20 to 25 times more powerful than heroin. The label in this case, the label for Subsys, repeatedly warns of the dangers of the drug, the risks associated with the drug." 4/4/19 Tr. 65:10-13. The Government went on to argue that Defendants transferred their financial risks to patients, "Profits over patients." 4/4/19 Tr. 66:7-9. The Government returned to its theme that Subsys is a dangerous drug over and over again in its initial and rebuttal closings.[6] At one point, the Government characterized Subsys as "the most dangerous prescription drug that there exists in the country." 4/5/19 Tr. 168:7-8.

Although the Government insisted at the end of its closing argument that the "patients that testified here were not called to inflame you. They were not called to exploit emotion," 4/4/19 Tr. 117:1-2, that is precisely what the Government intended.[7] The Government repeatedly invoked the most inflammatory aspects of patient testimony, which was admitted only for a very limited purpose, to exploit the emotions of the jury. See United States v. Carpenter, 405 F. Supp. 2d 85, 102 (D. Mass. 2005) (granting defendant new trial where prosecutor's closing theme went beyond the limited purpose for which certain evidence was admitted).

**D.     The "Jess Strategy" Email Was Admitted in Error**

During the testimony of Elizabeth Gurrieri, the Government introduced an email Mr. Gurry wrote to himself, with the subject line, "Training on btcp vs btp …Jess strategy." See Ex. 334. The email had no content other than a footer noting it was sent from an iPhone. Counsel

---

[6] See 4/4/19 Tr. 71:21-22 (noting Subsys is "just like those other drugs, incredibly dangerous, but it's faster"); 4/4/19 Tr. 77:4-5 (referring to active ingredient in Subsys as "the most potent opioid in the United States"); 4/4/19 Tr. 85:7-8 ("it's the most potent opioid on the market"); 4/4/19 Tr. 114:12-19 ("And they made millions. And by doing all of that, they created risk for others. . . . [doctors] wrote prescriptions for the most powerful opioid on the market.").

[7] See also 4/4/19 Tr. 115:24–116:25 (There were patients at the other end of this scheme. . . . Some of them were broken when they went to the defendant[s'] doctors, and some of them were broken because they went to the defendant[s'] doctors. But regardless of when they were broken, every single one of those patient you saw was exploited. . . . These patients were used. . . . Their pain was exploited.").

for Mr. Gurry objected that the email is not relevant because it was just a "draft email with a subject line and nothing else" that was at best ambiguous, and that no witness could explain. See 2/22/19 Tr. 249:22–250:2. The Government claimed the email was "arguably" a reminder to Mr. Gurry to train employees on the "spiel," a characterization defense counsel disputed. See 2/22/19 Tr. 250:13, 18-19. The Court acknowledged the relevance of the email was "close," but admitted the email because the "bar of relevance is low." 2/22/19 Tr. 250:20-21. Predictably, Ms. Gurrieri acknowledged she was not on the email and never saw it prior to preparing for trial. See 2/22/19 Tr. 251:3-8.

The Court should reconsider its decision to admit the "Jess' strategy" email, for two reasons. See Sampson, 2017 WL 3495703, at *4 (noting Court may reconsider evidentiary rulings in context of Rule 33 motion). First, the email is not relevant because it is not probative of any of the issues at trial. There was never any testimony explaining the email, which is susceptible to multiple interpretations. The most natural reading is that Mr. Gurry was making a note to himself that IRC employees needed training on the difference between breakthrough cancer pain and breakthrough pain. Jessica Chavez, an IRC employee had come up with a technically correct, but arguably misleading "spiel," and Mr. Gurry realized additional training was necessary to avoid misleading insurers. Liz Gurrieri acknowledged that IRC employees were trained on the difference. See 2/26/19 Tr. 181:17-22. The Government reads Exhibit 334 differently, as an endorsement of the spiel. This ambiguous email did not make it more or less likely that Mr. Gurry did or did not approve of false statements by IRC employees, and was therefore not probative of any issue at trial.

Second, the relevance of this email, if any, was marginal, and any probative value was substantially outweighed by a danger of unfair prejudice, confusion of the issues, and misleading

9

the jury. Fed. R. Evid. 403. The overly prejudicial nature of this email became clear when the Government singled it out in rebuttal as the document that purportedly corroborated Liz Gurrieri's testimony, although Ms. Gurrieri herself acknowledged she was not on it and did not receive it at the time. See 2/22/19 Tr. 251:3-8; 4/5/19 Tr. 181:12-22. Additionally, any minimal probative value of the email was substantially outweighed by the risk of confusion of the issues and misleading the jury because it was unclear whether the email demonstrated Mr. Gurry approved or disapproved of Jessica Chavez's breakthrough pain strategy.

**II.     The Government's Misconduct Likely Influenced the Jury's Verdict Against Mr. Gurry**

To determine whether a new trial is warranted in light of the Government's improper rebuttal the Court looks to the strength of the evidence, whether the prosecutor's comment was isolated or deliberate, and any curative instructions. See Sampson, 2017 WL 3495703, at *16. A single improper remark by a prosecutor may be sufficiently egregious to warrant a new trial, particularly if that remark is made in the context of a closing rebuttal, when the Government gets the last word and a defendant is powerless to respond. See Schneider, 157 F. Supp. 2d at 1063; United States v. Taylor, 54 F.3d 967, 977 (1st Cir. 1995). The Government's misconduct here was not harmless.

**A.     The Weight of the Evidence Against Mr. Gurry Was Not Strong**

The Government's case against Mr. Gurry consisted almost entirely of the testimony of one cooperating witness, whose testimony was contradicted by documents and other witnesses on several key points. A defendant is entitled to a new trial on the grounds that the verdict is contrary to the weight of the evidence where, after weighing the evidence and credibility of the witnesses, the Court determines "a miscarriage of justice may have occurred." See Schneider,

157 F. Supp. 2d at 1055.  The weak state of the evidence against Mr. Gurry is, on its own, a sufficient basis to grant him a new trial under Rule 33.

The weight of the evidence against Mr. Gurry also warrants a new trial because the Government's improper comments in closing arguments were not harmless.  It is firmly established that evidence sufficient to convict a defendant may nevertheless be insufficient to overcome prosecutorial misconduct.  See Ofray-Campos, 534 F.3d at 27, 29-30.  Even if the Court believes the jury could have found Mr. Gurry's guilt beyond a reasonable doubt, the Court may nevertheless grant a new trial in light of the Government's improper rebuttal where "a contrary conclusion also would have been rationally possible on the evidence."  See Carpenter, 405 F. Supp. 2d at 103 (denying motion for acquittal but granting new trial due to Government's improper closing); see also Ayala-Garcia, 574 F.3d at 7 (Court may consider evidence favorable to the Government "as well as the defendants' contrary view of the events in question"); Sampson, 2017 WL 3495703, at *3 (Court "may, and indeed must, consider its own evaluation of the credibility of the evidence" and a new trial may be warranted if the Court "disagrees with the jury's judgment").  The evidence in this case "was not so strong that it can confidently be said" that the Government's improper closing and other errors at trial "had no illegitimate effect on the jury's assessment of the evidence."  See Carpenter, 405 F. Supp. 2d at 103.

The Government's case against Mr. Gurry turned on the testimony of one cooperating witness, Elizabeth Gurrieri.  See Ayala-Garcia, 574 F.3d at 21 (noting improper closing can influence jury's credibility assessment in case where witnesses credibility is "central").  Mr. Gurry was convicted only for his role with respect to the IRC, and the jury did not convict him on the honest services or Controlled Substances Act predicates.  Prior authorization specialists testified that it was Liz Gurrieri, or people who reported directly to Liz Gurrieri, who instructed

11

them to lie to insurance companies, both before and after May 2014, when Mr. Gurry was no longer responsible for the IRC.  See 2/8/19 Tr. 93:25–94:10, 95:25–96:7, 109:5-13, 115:15-24, 116:2-9, 128:7-21; 3/26/19 Tr. 32:9-11, 36:9-20.  Ms. Gurrieri, in turn, claimed she was acting on Mr. Gurry's instructions.  However, the jury had only Ms. Gurrieri's word, and she could not identify a <u>single</u> document in which Mr. Gurry told her to lie, despite numerous meetings with prosecutors since she began cooperating in 2016.[8]  See 2/26/19 Tr. 211:24-25.

The IRC was "Her-Story" right up until the moment Ms. Gurrieri feared jail time.  See 2/26/19 Tr. 135:22-24, 153:12-14, 154:11-20; Ex. 357.  Courts are especially skeptical of cooperator testimony, and for good reason.  Cooperators are incentivized to implicate others to save themselves, as Ms. Gurrieri did here.  Courts can, and should, discount the weight of cooperator testimony in considering whether to grant a new trial under Rule 33.  See, e.g., <u>Ofray-Campos</u>, 534 F.3d at 27, 30 (granting new trial to two defendants where evidence "relied exclusively" on "uncorroborated" cooperator testimony); <u>see also</u> <u>United States v. Cruz-Padilla</u>, 227 F.3d 1064, 1069 (8th Cir. 2000) (granting new trial where Government case, based on cooperator testimony, "though considerable, was hardly overwhelming").

Ms. Gurrieri had ample motivation to lie to both the Government, and the jury, to secure a lesser sentence.  See 2/26/19 Tr. 201:11-15 (admitting that cooperating was her best way to avoid a long prison sentence).  And Ms. Gurrieri <u>did</u> lie, repeatedly, concerning details both large and small.  Her testimony is directly contradicted by the testimony of other witnesses, both cooperating and not, and by documents.

In one egregious example, Ms. Gurrieri claimed Mr. Gurry kept an office at the IRC location on Frye Road, which was located in a separate building from corporate headquarters,

---

[8] It is telling that the Government relied on the "Jess strategy" email to corroborate Mr. Gurrieri's testimony in its rebuttal argument.  See 4/5/19 Tr. 181:12-22.  No testifying witness could explain what was in Mr. Gurry's mind when he emailed himself this note, which is subject to conflicting interpretations, as discussed above.

until June 2013. See 2/22/19 Tr. 179:16–180:11. She also claimed Mr. Gurry's office was close to where Jessica Chavez, the original creator of the "spiel," sat in the Frye Road building, and that Mr. Gurry could have heard Ms. Chavez's calls with insurance companies. See 2/22/19 Tr. 233:19–234:4, 235:7–236:2. These were lies. Mr. Gurry never had an office on Frye Road. Ms. Gurrieri's testimony on this point was directly contradicted by two witnesses. Maury Rice, who was responsible for IT and set up the office space on Frye Road, testified unequivocally that Mr. Gurry never had an office on Frye Road.[9] See 1/30/19 Tr. 58:13-21. Prior authorization specialist Kim Fordham confirmed that Mr. Gurry's office was located in the headquarters building and she only saw Mr. Gurry in the IRC on Frye Road "three to four times, if that." See 2/8/19 Tr. 99:6-11.

Ms. Gurrieri also lied when she testified that her office door, which she claimed was across the hall from Mr. Gurry, was usually open in 2013. See 2/22/19 Tr. 183:11-25; 2/26/19 Tr. 174:11-13. In fact, Ms. Gurrieri received a bad review that cited her failure to keep her office door open, and in response to that review she said in mid-2014 that she "now" kept her office door open unless she was on a conference call. See 2/26/19 Tr. 175:17-25.

These are not minor lies. Ms. Gurrieri needed to convince both the Government and the jury that Mr. Gurry was physically present in the IRC and would have overheard her phone calls with insurance companies. Otherwise, Ms. Gurrieri had no way to show Mr. Gurry knew or approved of her lies to insurance companies, and Ms. Gurrieri would have no information to trade in exchange for cooperation credit. That Ms. Gurrieri lied to the jury is no surprise. She admitted to instructing IRC employees to lie for years, both during and after Mr. Gurry's tenure in the IRC. See 2/26/19 Tr. 180:25–181:2. As Mr. Gurry's replacement Chris Homrich warned,

---

[9] The Government has never accused Mr. Rice, who served as Insys' document custodian, of any wrongdoing, and he had no motivation to lie to the jury.

there were "ongoing issues of accountability and lack of trust" with Liz Gurrieri, who "tells you what you want to hear." See 2/26/19 Tr. 120:7-12.

Ms. Gurrieri's testimony was simply not credible on a number of additional critical points. For example, she testified that Mike Gurry told her to lie to insurance companies very early on in her employment, during the IRC pilot program, although they barely knew each other. See 2/22/19 Tr. 131:2-3, 133:16-21, 154:11-15, 155:16-20, 156:21–157:20, 159:18–160:8. It is implausible that Mike Gurry, who one witness agreed was a "stiff,"[10] see 3/26/19 Tr. 226:19-20, would instruct a near stranger to commit insurance fraud. It is especially unlikely that he did so during the pilot program, which took place from November 2012 through January 2013. Mr. Gurry was secretly recorded telling another Insys employee not to defraud insurance companies in October 2012, the same month Ms. Gurrieri was hired. See 2/22/19 Tr. 131:2-3. On the recording, a putative whistleblower asked Mr. Gurry about whether there was "anything that we can do" to help a Medicare patient whose Subsys prescription had been approved with a $60 copay. Mr. Gurry responded, correctly and without hesitation, "No. No, we can't assist a Medicare patient in any way shape or form." See Ex. 6875. Nor is it plausible that Mr. Gurry was the reason Ms. Gurrieri lied when she continued to lie to insurance companies long after Mike Gurry was replaced, as Ms. Gurrieri readily admits she did. See 2/26/19 Tr. 180:22–181:2; 3/1/19 Tr. 83:12-14.

Ms. Gurrieri's lies about Mike Gurry became increasingly ridiculous as she strained to implicate him in her crimes. In an effort to explain away the fact that Mike Gurry hired a quality control employee responsible for monitoring IRC calls, Ms. Gurrieri came up with the incredible story that quality control meant "[t]o ensure that [prior authorization specialists] were misleading

---

[10] See also 2/6/19 Tr. 127:21-25 (agreeing that Mr. Gurry is a pretty quiet kind of guy" and "wasn't a partyer"); 2/21/19 Tr. 90:5-7 (describing Mr. Gurry as "disciplined").

the insurers in the way they were advised to." See 2/26/19 Tr. 65:3-17, 66:17–67:6, 67:14-19. In other words, Mr. Gurrieri claimed Mike Gurry wanted quality assurance to ensure IRC employees were lying, not to ensure they were telling the truth. See 2/28/19 Tr. 76:4-13 (Question: "So you wanted to create a record of the crimes you were committing and the crimes you were instructing other people to commit?" Answer: "Correct."); see also 2/28/19 Tr. 89:7-9. Ms. Gurrieri also made up a story to explain why she deleted documents containing the spiel, or in the words of her correspondent, "OMG DELETE." See 2/26/19 Tr. 123:5-19. Despite the all caps and rush to destroy documents, Ms. Gurrieri claimed it was simply a matter of record keeping because that version of the spiel was "no long applicable." See 2/26/19 Tr. 123:20-23. Ms. Gurrieri's stories simply make no sense.

The evidence against Mr. Gurry, turning as it did on the testimony of an uncorroborated cooperating witness, was "not so strong" that the Court can be confident that the jury's conclusion was not affected by the Government's rebuttal, and a "contrary conclusion" was "rationally possible on the evidence." See Carpenter, 405 F. Supp. 2d at 103.

### B. The Government's Misconduct Was Neither Isolated Nor Accidental

The Government's numerous improper statements were not isolated. References to patient harm was woven throughout the structure of both closing arguments. The closing rebuttal was especially objectionable, with at least two egregious instances of misconduct: the gun argument and the assertion that Mr. Gurry was responsible as a corporate officer. Those comments further magnified patient testimony that should have been excluded, and the "Jess's strategy" email which was admitted in error.

Nor was the Government's closing rebuttal, delivered by one of the most experienced prosecutors in this district, accidental. Counsel for Mr. Gurry immediately objected that the rebuttal was improper because it was clearly scripted, complete with a prepared powerpoint

presentation. And the Government was well aware that the Court had rejected Defendants' proposed jury instruction on Defendants' roles in the company just two days prior.

### C. Curative Instructions Did Not Remove the Taint of the Government's Misconduct

Defendants immediately objected that the Court's original jury instruction was inadequate and moved for a mistrial over the weekend. Among other issues, the initial instructions did not explicitly address the civil law standard the Government attempted to import into the case against Mr. Gurry, and did not inform the jury that Mr. Gurry was not a corporate officer. The Government itself candidly acknowledged that the initial curative instructions were insufficient on some points. See 4/8/19 Tr. 6:11-17.

Nor were the Court's second round of curative instructions sufficient to overcome the prejudice inherent in the Government's closing rebuttal. The impact of the second round of curative instructions was diluted because those instructions were not delivered until Monday morning, after the jury had the Government's words ringing in its ears over the weekend. See Schneider, 157 F. Supp. 2d at 1067 (granting new trial where curative instruction issued "nearly two days" after the improper comment). The Court's refusal to provide the jury with a written copy of the curative instruction further reduced its effectiveness.[11] The Court's second round of curative instructions also did not go far enough, for several reasons. First, the Court declined to give a specific instruction directed at the Government's gun analogy, despite repeated objections from the Defendants. See Docket No. 819; 4/8/19 Tr. 17:9-19. Second, the Court instructed the jury that Defendants' positions as corporate officers or managers were "not alone enough" to convict them, 4/8/19 Tr. 20:8-9, 13, over Defendants' objections, 4/8/19 Tr. 16:5-6, 17-18, when

---

[11] The curative instruction was a modified version of the Executive or Managerial Role instruction Defendants originally requested, which the Court declined to include in the final jury charge because Park liability was not supposed to be at issue in this case.

16

in fact Mr. Gurry's role as a corporate manager is not relevant to whether he purposefully intended that IRC employees would lie to insurance companies.  Third, the Court declined to give stronger instructions requested by Defendants, including a reprimand that the "government should have never made this argument to you, and you must disregard it in your deliberations. . . .Such considerations have no place in this case."  Docket No. 819 at 13.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in Defendants' Renewed Joint Motion for Judgment of Acquittal and Joint Motion for a New Trial, the Court should vacate Defendant Mike Gurry's conviction and remand for a new trial.

MICHAEL GURRY,
By his attorneys,


/s/ Tracy A. Miner
Tracy A. Miner, BBO No. 547137
Megan A. Siddall, BBO No. 568979
Miner Orkand Siddall LLP
470 Atlantic Ave, Floor 4
Boston, MA  02110
Telephone: (617) 263-8421
Fax:  (617) 273-8004
Email: msiddall@mosllp.com
Email:  tminer@mosllp.com

Dated:  June 6, 2019

**CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing document was served by ECF on counsel for all parties on June 6, 2019.

                                           /s/ Megan A. Siddall
                                           Megan A. Siddall