UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CRIMINAL NO.   16-10343-ADB |
| | ) | |
| MICHAEL GURRY, | ) | **LEAVE TO FILE REPLY** |
| Defendant. | ) | **GRANTED JANUARY 10, 2019** |
| | ) | |

# UNITED STATES' REPLY IN SUPPORT OF
# MOTION FOR ORDERS OF FORFEITURE

The United States of America, by its attorney, Andrew E. Lelling, United States Attorney for the District of Massachusetts, respectfully provides this reply in support of its *Motion for Orders of Forfeiture* (Doc. 1049). The parties seemingly agree on the necessary burdens of proof and the majority of the legal principles. Gurry, however, challenges the method used to calculate the amount of his proceeds to be included in the Order of Forfeiture (Money Judgment). Gurry does not contest the forfeiture of his stock albeit under a different prong of the racketeering forfeiture statute.[1] *See* Doc. 1101 at 5 (Gurry does not dispute that any shares…are forfeitable…").

## I.   Calculating Gurry's Proceeds

### a.   All gross proceeds

The parties agree that the Defendant must forfeit proceeds obtained, directly or indirectly, from racketeering activity, that there must be a nexus between the crime and the proceeds, that the

---

[1] Pursuant to 18 U.S.C. § 1963(a)(3), the government moved to forfeit Gurry's remaining Insys shares, if any, as proceeds of his crime. Gurry does not contest that the remaining shares, if any, are subject to forfeiture but suggests that they are forfeitable pursuant to 18 U.S.C. §§ 1963(a)(1) and (2). The government maintains that they are subject to forfeiture under any subsection of Section 1963(a) and does not object to an entry of an order pursuant to any or all such statutory authority.

1

proceeds are forfeitable to the extent they are tainted by the racketeering activity, and that proceeds are defined as property the Defendant would not have obtained but-for the commission of the offense. The parties disagree on the application of the facts to the law – the government maintains that but-for the racketeering conspiracy, Gurry would not have obtained his salary and bonus payments, awards of Insys stock options later exercised and liquidated, and shares of Insys stock. Gurry, however, challenges the government's argument that but-for the crime, all Insys income was tainted. Gurry claims, therefore, the forfeiture order must be reduced by 1) payment for work Gurry performed that was not in furtherance of the racketeering conspiracy, 2) payment related to valid cancer pain-related claims, and 3) payment related to claims not processed via the IRC.

Here, Insys was permeated with the racketeering conspiracy and the criminal enterprise did not parse Gurry's involvement as finely as he proposes – every dollar earned by Insys was part and parcel of the scheme and every success of the scheme, and successful concealment of the scheme, was foreseeable to Gurry and led to proceeds in his pocket. *See United States v. Reiner*, 397 F. Supp. 2d 101, 106 (D. Me. 2005) (all revenue of health club that was a front for a prostitution business was proceeds of the prostitution offense because the club would not have existed, and thus would have had no income at all, but for the illegal activity; that some of its revenue was for legal services is therefore irrelevant), *aff'd*, 500 F.3d 10, 19 (1st Cir. 2007) (District Court's ruling not clearly erroneous; "income derived from activities designed to conceal the illegal nature of the enterprise are appropriately subject to forfeiture."); *see also United States v. Warshak*, 631 F.3d 266, 329–330 (6th Cir. 2010) (all proceeds of defendant's business are forfeitable because the business was "permeated with fraud"; but even if a part of the business was legitimate, the proceeds of that part are nevertheless forfeitable if the legitimate side of the business would not exist but for the "fraudulent beginnings" of the entire operation); *United States v. Smith*, 749 F.3d 465, 488–89

2

(6th Cir. 2014) (following *Warshak*; if business is so pervaded by fraud that its revenue stream would not have existed but for the fraud, any asset derived from that revenue stream is forfeitable as proceeds); *United States v. Park*, 825 F. Supp. 2d 644, 648 (D. Md. 2011) (following *Warshak,* entire business forfeited as proceeds if it would not have been solvent but for "the infusion of illegally-obtained funds").

Gurry argues that Insys performed legitimate work and that his role at Insys included legitimate responsibilities. Nevertheless, his argument ignores that the company only became successful because of the racketeering conspiracy. The Court need look no further than the two failed Initial Public Offering attempts – pre-conspiracy – to find proof to a preponderance of the evidence at least, that Insys' successes, and Gurry's income, were predicated and inextricably tied to the crime.

### b. *Gurry never withdrew from the conspiracy*

Gurry also argues that his receipt of racketeering conspiracy proceeds stopped when daily supervision of the IRC was transferred from him to others. To credit Gurry's argument, the Court must find that Gurry actually withdrew from the conspiracy when these duties were reassigned – and he did no such thing. *See United States v. Collins*, 209 F.3d 1, 4 (1st Cir. 1999) ("A defendant in a conspiracy is liable for all the reasonably foreseeable loss caused to the victims of the conspiracy."); *see also United States v. Alas*, 196 F.3d 1250, 1251 (11th Cir. 1999) (defendant liable for restitution for all losses from conspiracy – even when he became incarcerated during the conspiracy; liable for all acts and foreseeable consequences of conspiracy). "[I]n order to withdraw from a conspiracy, 'a conspirator must act affirmatively either to defeat or disavow the purposes of the conspiracy.'" *United States v. Piper*, 298 F.3d 47, 53 (1st Cir. 2002) (quoting *United States v. Juodakis*, 834 F.2d 1099, 1102 (1st Cir. 1987)). "[M]ere cessation" of activities

is not withdrawal; withdrawal requires affirmative action – typically a full confession from a defendant to law enforcement or a defendant informing co-conspirators that he/she has withdrawn from the goals of the conspiracy. *See e.g. United States v. Nason*, 9 F.3d 155, 162 (1st Cir. 1993); *United States v. Munoz*, 36 F.3d 1229, 1234 (1st Cir. 1994). Gurry never withdrew from the racketeering conspiracy. There is no evidence that Gurry confessed to law enforcement or told his co-conspirators he was abandoning the conspiracy. Gurry remained a member of the conspiracy past 2014 and continued to profit from the success of the criminal enterprise. Gurry continued to draw a salary and to otherwise benefit from the conspiracy and, particularly given his role in establishing the IRC, the acts and consequences of those acts to victims even after his reassignment were entirely foreseeable to him. Even if Gurry withdrew from the conspiracy, which he did not, his withdrawal would still not magically change those tainted RICO proceeds into clean money.

      *c. Stock*

Gurry also raises the same arguments with respect to his earnings tied to the execution of Insys stock options. Gurry requests the Court reduce the amount of forfeiture either to 20% of his stock option income, or the amount of proceeds obtained limited to non-cancer claims and claims that were submitted via the IRC. For the reasons set forth in Sections I(a) and (b) above, these arguments also fail.

**II.**    **The Requested Forfeiture Does Not Violate the Eighth Amendment**

The parties agree that the Eighth Amendment's prohibition of excessive fines applies to forfeiture and that the excessive fines test prohibits forfeiture that is "grossly disproportional to the gravity of the offense." *See United States v. Bajakajian*, 524 U.S. 321, 323 (1998). The Defendant bears the burden to prove to a preponderance of the evidence that the forfeiture is

grossly disproportionate. *See von Hofe v. United States*, 492 F.3d 175, 183 (2d Cir. 2007); *see also United States v. Fogg*, 666 F.3d 13, 18–19 (1st Cir. 2011); *United States v. Aguasvivas-Castillo*, 668 F.3d 7, 16 (1st Cir. 2012); *United States v. Castello*, 611 F.3d 116, 120 (2d Cir. 2010). Forfeiture of traceable proceeds of a crime, such as those at issue here, are not often found to violate the Eighth Amendment because to find otherwise, the Court must decide that a Defendant may keep some of the traceable fruits of his or her crime. Typical Eighth Amendment forfeiture violations are found not in traceable proceeds cases, but rather in cases involving property 'involved in' crimes, such as the corpus of a failure to report crime, or the corpus involved in a money laundering scheme. The Defendant cannot meet his burden here to show repayment of his traceable proceeds would be unconstitutional.

Bajakajian was convicted of failure to report exported currency and the government sought forfeiture of the entire amount of non-reported currency as property involved in the offense (not proceeds). *Id*. The District Court denied the government's request for all the money involved, an amount approximately 70 times the available maximum fine, and instead, ordered forfeiture of just $15,000, which is the amount the Court deemed comparable to a fine it might otherwise order. *Id*. The Supreme Court affirmed and observed that Bajakajian's offense was solely a reporting offense, that the money involved in the crime was not proceeds of any other offense, and that the

harm caused was minimal.² The Court provided a three-prong test for determining whether a forfeiture order is permitted under the Eighth Amendment. *Id.*; *see also United States v. Aguasvivas-Castillo*, 668 F.3d 7, 17 (1st Cir. 2012) (applying 3 *Bajakajian* factors); *see also Carpenter,* 2019 WL 5287926 at *7-8. The three factors are:

(1) whether the defendant fits into the class of persons at whom the statute was aimed;

(2) the other penalties authorized by Congress or the Sentencing Commission; and

(3) the harm caused.

*Id*. Congress is "entitled to deference" when fixing the penalty for an offense. *See United States v. Jose*, 499 F.3d 105, 110–11 (1st Cir. 2007). The remedy for an Eighth Amendment violation is to reduce the forfeiture only as much as necessary to avoid the violation. *See e.g. United States v. Castello*, 611 F.3d 116, 121 (2d Cir. 2010).

*First*. The first factor is whether defendant fits into the class of persons at whom the statute was aimed. This factor weighs in favor of the forfeiture. The jury heard significant evidence of Gurry's role in a racketeering conspiracy, in violation of the statute, and this Court has also upheld his Racketeering Conspiracy conviction. The RICO statute covers broad types of criminal conduct, including Gurry's in this case, and the courts have observed that the manner in

---

² Congress disagreed with the Court's view of the seriousness of the crime and directly responded to the *Bajakajian* holding by enacting a new criminal statute – bulk cash smuggling. The committee report stated:

> The Committee believes ... that bulk cash smuggling is an inherently more serious offense than simply failing to file a Customs report. Because the constitutionality of a forfeiture is dependent on the "gravity of the offense" under *Bajakajian*, **it is anticipated that the full forfeiture of smuggled money will withstand constitutional scrutiny in most cases**.

H.R.Rep. No. 107–250(I), at 53 (2001)(emphasis added). So too, Congress could not have been more clear that they consider RICO an incredibly serious offense.

which a convicted defendant violated a specific statute need not be deemed "typical."  *See e.g. United States v. Heldeman*, 402 F.3d 220, 223 (1st Cir. 2005); *United States v. Lyons*, 870 F. Supp. 2d 281, 293 (D. Mass. 2012) (Saris, J.).  Gurry contends that RICO's scope is limited to "mafia dons, not pharmaceutical executives" but "Racketeering Activity" is broadly defined and includes the very crimes Gurry committed, mail and wire fraud.  *See* 18 U.S.C § 1961(a)(1) (lengthy list of crimes used to define "racketeering activity").  In addition, the statute is intended to eradicate organized crime – here, the jury determined that these Defendants conspired to act in exactly the ways the statute was concerned about – as organized criminals perpetrating nationwide crimes.

*Second*.  The second factor also favors the forfeiture.  When considering the second factor, the *authorized* penalties, the court gives "great weight to [the] statutory judgment by Congress" and looks at the authorized maximum fine.  *Carpenter*, 2019 WL 5287926 at *8.  The maximum penalty, and not the guideline range, is the appropriate benchmark because the "statutory scheme is a better guide to whether the forfeiture order is excessive."  *See e.g. Carpenter*, 941 F.3d at 11.  As discussed above, Congress was explicit in its intent that RICO forfeiture be applied broadly and the Supreme Court and First Circuit have upheld that goal.  *See e.g. Russello,* 464 U.S. at 27-28; *Hurley*, 63 F.3d at 21 (generous construction of RICO forfeiture, in line with Congress' unusual command that RICO (although a criminal statute) be broadly interpreted."); *Alexander v. United States*, 509 U.S. 544, 562 (1993) ("RICO conviction subjects the violator not only to traditional, though stringent, criminal fines and prison terms, but also mandatory forfeiture under § 1963.").

Gurry does not dispute a loss between $9,500,000 and $25,000,000.[3]  *See* Doc. 1065 at

---

[3] The loss is likely in excess of $300 million.  However, even under Gurry's agreed-upon loss, his forfeiture is constitutional.

14. The maximum fine authorized by the legislature is "not more than the greater of twice the gross gain or twice the gross loss." *See* 18 U.S.C. § 3571(d). Under this alternative framework, Congress authorized a potential maximum fine of between $19 and $50 million. Thus, any order of forfeiture below $19 to $50 million, including the requested forfeiture, would readily satisfy this factor. Unlike the proposed forfeiture here, $5,102,996.66, which is less than the loss under any calculation, the vacated forfeiture order in *Bajakajian*, for example, was more than 70 times the guideline. *See Heldeman*, 402 F.3d at 223 (distinguishing *Bajakajian* and observing Heldeman's forfeiture was only 15% of the maximum fine).

*Third*. The third factor, the harm caused, easily favors the forfeiture. This Court has recognized that Defendants' "fixation on increasing the number and dosage of Subsys prescriptions combined with prescribers' interest in increased speaker payments, ultimately harmed an untold number of patients." *See* ECF No. 1028 at 21. In addition to the untold number of patients harmed, the Defendant also directly harmed government and commercial insurers through the use of the Insys Reimbursement Center and its daily fraudulent activities. The Defendant's nationwide and long-lasting racketeering scheme caused a significant amount of pecuniary, physical, and emotional harm.

*Levesque*. The First Circuit has interpreted *Bajakajian* to require a fourth step, an inquiry into whether the forfeiture would deprive the defendant of his livelihood. *See United States v. Levesque*, 546 F.3d 78, 83 (1st Cir. 2008) (fourth step should be considered). However, this affirmative defense to forfeiture is rarely applied and, unlike the facts of this case, applies only in extreme cases. *United States v. Aguasvivas-Castillo*, 668 F.3d 7, 16 (1st Cir. 2012). Inability to pay at sentencing "is not at all sufficient to render a forfeiture unconstitutional, nor is it even the correct inquiry." *Id*. at 85. Because money judgments may be enforced in the future, and not

at sentencing, they simply do not deprive the Defendant his livelihood. *Id*. A defendant could easily come into money later. *Id*. In addition, significantly, the Attorney General has the discretion in the future to "remit a forfeiture on the grounds of hardship to the defendant." *Id*. In *United States v. Fogg*, the defendant appealed the forfeiture order and argued the inability to pay/*Levesque* factor. 666 F.3d 13 (1st Cir. 2011). Citing *Levesque*, the First Circuit noted that because a money judgment may be collected later, inability to pay at sentencing is not the appropriate question. *Id*. Here, the fourth factor does not prohibit the forfeiture because the Defendant may come into money in the future, the government may choose to remit the forfeiture, and because the government has not yet sought to forfeit any of the Defendant's assets.

**III.    Equal Protection/Tax Payments**

The Defendant also incorrectly contends that he is entitled to an offset due to his payment of "income and capital gains taxes." The Defendant fails to acknowledge that this argument is foreclosed by binding First Circuit precedent. *See United States v. Hurley*, 63 F.3d 1, 21 (1st Cir. 1995) (rejecting argument that "proceeds" means "net proceeds" or "net profits" under § 1963(a)(3)). The Defendant also fails to inform the Court that this issue is presently under review by the First Circuit in *United States v. Glenn A. Chin*. Appeal No. 18-1263.[4] Chin, an employee of the New England Compound Pharmacy ("NECC"), was convicted of racketeering, racketeering conspiracy, forty-three counts of mail fraud and a number of other crimes in connection to his role in the 2012 fungal meningitis outbreak that caused at least 753 cases of fungal meningitis and 64 fatalities.

Pursuant to 18 U.S.C. § 1963(a)(3), the government moved for an Order of Forfeiture equal

---

[4] The First Circuit heard oral argument on November 5, 2019 and the parties are awaiting a decision.

to the amount of money Chin obtained from NECC as the gross proceeds of his crimes. *See United States v. Barry J. Cadden et. al.*, 1:14-cr-10343-RGS, Doc. 1391 (United States' Motion for Order of Forfeiture). First, the District Court agreed with the government that Chin must forfeit the salary he was paid by NECC during the time is was operating as a criminal enterprise – much like Insys was here. *Id*. at Doc. 1505, 33-34 (transcript of February 15, 2018 forfeiture/restitution hearing) (Judge Stearns: "I think the law is quite clear that [salary]" is forfeitable as proceeds.). Then, the District Court, over government objection, subtracted the amount of tax Chin paid on his proceeds from Chin's gross proceeds. The defendant appealed his conviction and the government cross-appealed on a number of grounds, including this issue. *See Cross-Appeal Reply Brief for the United States*, *United States of America, Appellee / Cross-Appellant, v. Glenn A. Chin, Defendant-Appellant / Cross-Appellee.*, 2019 WL 4689076, *15 (C.A.1).

The First Circuit has routinely reaffirmed *Hurley*'s holding, rejecting calls to limit forfeiture awards to the defendant's "net income of the illegal ... operation." *United States v. Iacaboni*, 363 F.3d 1, 4 (1st Cir. 2004). The *Hurley* holding forecloses any deduction for costs and expenditures connected to the racketeering proceeds, including expenditures relating to tax liability. Where a statute authorizes forfeiture of criminal "proceeds," it refers to the defendant's "receipts rather than profits." *Levesque*, 546 F.3d at 82. "Withheld taxes that an employer pays to the government on behalf of its employees are part of their compensation." *Brown v. United States*, 591 F.2d 1136, 1141 (5th Cir. 1979). Even in forfeiture cases permitting forfeiture of *net* proceeds, taxes are not a direct cost and are not deducted from the gross. *See e.g. United States v. Gorski*, 880 F.3d 27, 42-43 (1st Cir. 2018). In *Gorski*, using a net proceeds analysis, Gorski argued "that a credit for his tax payments and compensation is constitutionally required." *Id*. at

43. The First Circuit said they are "aware of no clear supporting authority for this constitutional argument." *Id*.

Nevertheless, the Defendant asks the Court to craft a formula based on his own tax payments and his "detailed records", but the law precludes this request. *Hurley* held that forfeiture under Section 1693(a)(3) targets the gross proceeds obtained by the defendant.

Finally, the Defendant contends that forfeiture of his gross proceeds would result in a windfall to the government due to his previous tax payments. But forfeiture is not a second tax assessment. *See e.g. Gorski*, 880 F.3d at 42-43. And Congress did not intend for "'rigid and technical definitions drawn from other areas of the law,'" including the tax code, to limit forfeiture judgments under Section 1963(a). *United States v. DeFries*, 129 F.3d 1293, 1314 (D.C. Cir. 1997) (*quoting Russello v. United States*, 464 U.S. 16, 21 (1983)).

                                            Respectfully submitted,

                                            ANDREW E. LELLING
                                            United States Attorney

                              By:    */s/ David G. Lazarus*
                                            DAVID G. LAZARUS
                                            K. NATHANIEL YEAGER
                                            FRED M. WYSHAK, JR.
                                            Assistant United States Attorneys
                                            One Courthouse Way, Ste. 9200
                                            Boston, MA   02210
                                            (617) 748-3100

Dated: January 10, 2020              david.lazarus2@usdoj.gov