# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. No. 16-10343-ADB |
| | ) | |
| MICHAEL J. GURRY, | ) | |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT GURRY'S MOTION FOR STAY OF SENTENCE PENDING APPEAL

The motion of the defendant, Michael J. Gurry, to stay his sentence pending appeal should be denied, as he has not identified in his motion a substantial question of law on the merits that would warrant the granting of relief.  To the extent other Defendants may have orally joined in this motion, it should be denied as to those Defendants for the same reason.

## STATEMENT OF FACTS

On May 2, 2019, following a 50-day trial and 15 days of deliberations, a jury convicted Gurry and four other defendants—John Kapoor, Richard L. Simon, Sunrise Lee, and Joseph A. Rowan—of conspiracy to violate the Racketeering Influenced and Corrupt Organizations Act ("RICO"), in violation of 18 U.S.C. §1962(d). [D.841].  Following the verdicts, all five defendants moved for judgment of acquittal and for a new trial.  [D.859-864].  On November 26, 2019, the Court granted a partial judgment of acquittal in the cases of Kapoor, Simon, Lee and Rowan, but otherwise denied the motions.  [D.1028].

On January 13, 2020, the Court sentenced Gurry to 33 months of imprisonment to be followed by three years of supervised release, and ordered a self-surrender date of February 25, 2020.  [D.1141].  Gurry has now moved to stay his sentencing pending appeal.  [D.1142].

## **LEGAL STANDARD**

Gurry seeks a stay of his sentence of incarceration pursuant to 18 U.S.C. §3143(b).  That statute provides that a person convicted of an offense and sentenced to a term of imprisonment shall be detained pending appeal "unless the judicial officer finds":

> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and

> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—

> (i) reversal,

> (ii) an order for a new trial,

> (iii) a sentence that does not include a term of imprisonment, or

> (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. §3143(b)(1). "If the judicial officer makes such findings, such judicial officer shall order the release of the person * * *."  *Id.*

With respect to the showing required under 18 U.S.C. §3143(b)(1)(B), the First Circuit has stated that it has two distinct parts: "(1) that the appeal raise a substantial question of law or fact and (2) that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed."  *United States v. Bayko*, 774 F.2d 516, 522 (1st Cir. 1985); *see also United States v. Zimny*, 857 F.3d 97, 99 (1st Cir. 2017) (referring to the former as the "the substantiality prong" and the latter as the "likelihood prong").  In determining whether an appeal raises a substantial question of law or fact, it is not enough for a defendant to show that a disputed point

of law or fact was "fairly debatable" or that a "possibility of reversal" exists. *Bayko*, 774 F.2d at 523 (vacating district court's order and revoking bail upon finding that the district court erroneously ordered bail when it concluded that there was a "possibility of reversal" on appeal). Rather, an appeal must present a "'close question or one that very well could be decided the other way.'" *Zimny*. 857 F.3d at 100 (quoting *Bayko*, 774 F.2d at 523).

## ARGUMENT

Gurry contends that his sentenced should be stayed pending appeal because his anticipated appeal raises a substantial question of law or fact. As shown below, none of the anticipated claims that he has identified presents substantial question of law that would warrant a stay of his pending appeal.

**1.** Gurry contends (Mot. at 4-7) that the Court erred in denying his motion for a new trial based on the government's rebuttal argument, and raises two points that he asserts the First Circuit could decide in his favor: (1) whether the Defendants waived their objections to the government's rebuttal, and (2) whether the Court applied the wrong harmlessness analysis in finding that the Court's supplemental instructions were sufficient to cure any harm. Neither points presents a substantial question of law.

With respect to the question of waiver, Gurry asserts (Mot. at 5) that "[o]nce Defendants raised their objections [to the government's rebuttal] and the Court ruled on them, Defendants are not required to renew their objections to preserve them for appeal." This assertion ignores how this issue developed. By moving for curative instructions in lieu of a mistrial—Defendants' request for a mistrial was only in the event the Court declined to give curative instructions, which did not happen—Defendants implicitly conceded any complaints they had with the government's rebuttal could be cured if their requested curative instructions were given. When the Court

thereafter circulated draft instructions to the parties and the Defendants offered edits without objecting that the supplemental instructions were inadequate (with the exception of the loaded gun metaphor), Defendants again signaled that the supplemental instructions proposed by the Court were acceptable.  And after the Court read the supplemental instructions to the jury and asked whether any party wanted a sidebar, no party requested a sidebar or voiced an objection.  In these circumstances, and as the Court correctly determined, "Defendants' silence can be interpreted as approval of the Court's instruction."  [D.1028, at 44].  As the First Circuit has said in analogous circumstances, "[t]hat is waiver, pure and simple."  *United States v. Charriez-Rolón*, 923 F.3d 45, 53 (1st Cir.), *cert. denied*, 140 F.3d 232 (2019).

This conclusion is consistent with Fed. R. Crim. P. 30(d), which requires a party who objects to "any portion" of a district court's jury instructions or the failure to give a requested instruction must inform the court of "the specific objection and the grounds for the objection before the jury retires to deliberate."  Thus, "[t]o preserve an objection to a jury instruction under Fed. R. Crim. P. 30(d), a litigant must lodge a specific objection and state the grounds for the objection *after* the court has charged the jury and before the jury begins deliberations."  *United States v. Roberson*, 459 F.3d 39, 45 (1st Cir. 2006) (emphasis in original).  Here, once again, after the Court read the supplemental instructions to the jury and asked whether any party wanted a sidebar, no party requested a sidebar or voiced an objection.  That failure underscores the conclusion that Defendants' objections to the government's rebuttal (with the exception of the loaded gun metaphor) were waived.

Gurry's assertion (Mot. at 5) that the First Circuit might find that the Court applied the wrong harmlessness analysis also is not well taken.  Gurry asserts that the government's incorrect characterization of his position at Insys violated his Sixth Amendment right to a verdict based

solely on the evidence at trial, But Gurry fails to cite any case that holds that any misstatement of the evidence during closing or rebuttal rises to the level of a Sixth Amendment violation.  To the contrary, in *United States v. Awer*, 770 F.3d 83 (1st Cir. 2014), for example, the First Circuit held that a prosecutor's "slight misstatement of the evidence" during closing argument "was hardly harmful," and, in doing so, applied the standard for non-constitutional errors.  *Id*. at 96 (citing *United States v. Dancy*, 640 F.3d 455, 463 (1st Cir. 2011) ("'Any error is harmless if the government shows it is 'highly probable that the error did not influence the verdict.''" (citation omitted)).

    **2.**      Gurry contends (Mot. at 7) that he is entitled to a new trial because the weight of the evidence against him was "thin," inasmuch, he asserts, it "stands and falls on the wobbly footing of Liz Guerrieri's testimony."  That claim also is unavailing.  Although the Court may weigh the evidence and evaluate the credibility of witnesses in ruling on a new trial motion, *see United States v. Indelicato*, 611 F.3d 376, 387 (1st Cir. 1979), the First Circuit "has emphatically stated that a trial judge is not a thirteenth juror who may set aside a verdict merely because he [or she] would have reached a different result." *United States v. Rothrock*, 806 F.2d 318, 322 (1st Cir. 1986).  It also is not sufficient to show that the evidence "gave rise to competing plausible inferences, some pointing to guilt and others to innocence," because "[t]he jury is charged with choosing between such inferences." *United States v. Ruiz*, 105 F.3d 1492, 1502 (1st Cir. 1997). A new trial based on the weight of the evidence thus is not warranted "unless it is quite clear that the jury has reached a seriously erroneous result." *Rothrock*, 806 F.3d at 322.

    In this case, Liz Guerrieri's testimony directly inculpated Gurry in the Insys Reimbursement Center ("IRC") scheme, and a reasonable jury also could have found that the so-called "Jess Strategy" e-mail corroborated some of her testimony that Gurry was aware of the

"spiel." The heart of Gurry's defense was that Guerrieri's testimony was not credible, but the jury concluded otherwise. In these circumstances, Gurry has not come close to showing that the jury reached a "seriously erroneous result." To the extent this claim may not have been directly addressed in the Court's post-trial opinion, the Court can remedy that by addressing it in its decision on this motion.

3.      Gurry contends (Mot. at 8) that he is entitled to a new trial because patient testimony was admitted in error, but this claim also is unavailing. As the Court correctly determined, the patient testimony at trial (1) conformed to the Court's *in limine* ruling in which it allowed only limited use of patient testimony and carved out most inflammatory aspects, such as the social consequences of addiction, and (2) that testimony relevant to show the medical care that patients received from co-conspirator prescribers, to demonstrate that certain prescriptions were not medically necessary or were excessive, and to support claims that a patient's medical status was different from what was represented to insurers. [D.1028, at 49]. Moreover, although Gurry notes that Defendants offered to stipulate to some of this testimony, the government was not obligated to agree to a stipulation. [D.1028, at 49].

Finally, with respect to Gurry's assertion that the government "went out of its way to appeal to the motions of the jury in closing by highlighting the difficulties patients experienced," that claim would be reviewable only for plain error on appeal because Gurry did not contemporaneously object to any of the comments of which he now complains. *See United States v. Zarauskas*, 814 F.3d 509, 514 (1st Cir. 2016). Gurry makes no attempt to show that he can satisfy the demanding plain error standard, on appeal, which will require him to show: "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of

judicial proceedings." *United States v. Duarte*, 246 F.3d 56, 60 (1st Cir. 2001). Nor could he. As the Court determined in rejecting this claim, "[s]ome of the statements cited are purely factual, and none run afoul of the Court's motion *in limine* ruling concerning patient testimony, which limited the scope of what would be admissible and did not limit how the admissible evidence could be used. All told, the comments fell within the bounds of permissible argument and do not amount to plain error. [D.1028, at 47 n.95].

4.      Gurry contends (Mot. at 9) that the question whether acquittal or a new trial on the mail and wire fraud predicates presents a sufficiently close question to warrant a stay pending appeal. Here, too, he is wrong.

With respect to the wire fraud predicate, Gurry invokes the intracorporate conspiracy doctrine and asserts that the Court recognized that "there is a recognized circuit split on the issue of whether the intracorporate conspiracy doctrine applies to RICO conspiracies." But the circuit split he notes involves whether the intracorporate conspiracy doctrine applies to *civil* RICO conspiracies; as this Court noted, "[e]ven courts that have applied the intracorporate conspiracy doctrine in civil cases do not apply it to the criminal context." [D.1028, at 27]. The Court also found instructive *United States v. Peters*, 732 F.2d 1004, 1008 (1st Cir. 1984)—in which the First Circuit held that "[t]he actions of two or more agents of a corporation, conspiring together on behalf of the corporation, may lead to conspiracy convictions of the agents (because the corporate veil does not shield them from criminal liability) and of the corporation (because its agents conspired on its behalf)"—and concluded that "[e]ven if the First Circuit chooses to follow the minority of circuits and apply the intracorporate conspiracy doctrine to civil RICO conspiracy cases, the fact that it declined to apply the doctrine in the [18 U.S.C.} §371 context in Peters suggests that it is unlikely to apply the doctrine to criminal RICO conspiracy cases." [D.1028, at

27]. Hence, the wire fraud predicate does not present a close issue on which Gurry might succeed on appeal.

As to the mail fraud predicate, Gurry asserts that the mailings that form the basis of that predicate did not aid in the IRC"s lies to insurance companies. As the Court correctly determined, however, "the fraudulent scheme alleged in the SSI deceived insurers into paying for prescriptions for which they otherwise would not have paid," and "[t]he mailing of bribes to prescribers facilitated the execution of the fraudulent scheme by incentivizing prescriptions from high-volume practitioners." [D.1028, at 29]. Hence, the mail fraud predicate also does not present a close issue on which Gurry might succeed on appeal.

## **CONCLUSION**

For the foregoing reasons, Gurry has failed to show that his appeal will present a substantial question of law that would warrant the granting of a stay of his sentence of incarceration, and his motion requesting such a stay therefore should be denied.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:     /s/ Mark T. Quinlivan
K. NATHANIEL YEAGER
FRED WYSHAK, JR.
DAVID G. LAZARUS
MARK T. QUINLIVAN
Assistant U.S. Attorneys

## **Certificate of Service**

I, Mark T. Quinlivan, hereby certify that the foregoing document filed through the ECF system will be sent electronically to counsel for the defendants.

By:     /s/ Mark T. Quinlivan
MARK T. QUINLIVAN